UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LISA M. CLANTON,

        Plaintiff,

v.                                    Civil Action No.: 2:14cv649

CITY OF VIRGINIA BEACH,

        Defendant.


## MEMORANDUM ORDER

This matter is before the Court on a motion to dismiss, ECF No. 4, filed on January 28, 2015 by the City of Virginia Beach ("the City" or "Defendant").  In such motion, the City contends that the Court must dismiss Lisa M. Clanton's ("Plaintiff") Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiff has failed to exhaust her administrative remedies.  After examining the briefs and the record, the Court determines that oral argument is unnecessary because the facts and legal contentions are adequately presented and oral argument would not aid in the decisional process.  Fed. R. Civ. P. 78(b); E.D. Va. Loc. R. 7(J).

## I. FACTUAL AND PROCEDURAL HISTORY[1]

The City, a municipality within the Commonwealth of Virginia, operates a Department of Public Works that is "responsible for managing programs and resources to enhance the health, safety, and welfare of the residents, businesses, and visitors of the City." Compl. ¶ 6, ECF No. 1 (internal quotation marks omitted). The City's Department of Public Works employs roughly 850 individuals and operates a number of divisions, including the Division of Building Maintenance. Id.

Plaintiff, a Chesapeake, Virginia, resident, is a former employee of the City who worked as a "Custodian I" for the City's Department of Public Works Building Maintenance Division. Id. ¶ 5. In such capacity, "[s]he was responsible for performing routine housekeeping duties in various City owned buildings." Id. As a Custodian I, she reported to a "crew leader," who, in turn, reported to a "custodial supervisor." Id.

Plaintiff alleges that Rudy Diaz ("Diaz"), a crew leader for the Department of Public Works, sexually harassed her

---

[1] The facts recited herein are drawn from the allegations set forth in the Complaint, and such facts are assumed true for the purpose of deciding the motion currently before the Court. However, the facts recited here are not factual findings for any purpose other than consideration of the instant motion.

beginning in February 2012.[2]  Id. ¶¶ 3, 10, 16.  According to Plaintiff, prior to harassing Plaintiff, Diaz had harassed "at least five different custodians who reported to him as their crew leader" between 2009 and 2012; however, the City did not "take remedial measures against Mr. Diaz sufficient to deter him from engaging in future sexual harassment . . . ."  Id. ¶ 13. Following two alleged incidents of sexual harassment by Diaz, Plaintiff contacted Shelby Goldsmith ("Goldsmith"), an analyst in the City's Human Resource Department, and anonymously complained of Diaz's behavior.  Id. ¶ 19.  According to Plaintiff, Goldsmith "advised [Plaintiff] that her allegations were merely '[her] word against his' and that her complaint would therefore be difficult to prove."  Id.  Plaintiff alleges that Goldsmith's advice discouraged her from filing a formal complaint with the City and that the City, despite knowledge of the allegations against Diaz based on Plaintiff's anonymous complaint, failed to investigate such allegations because it had no policy to handle anonymous complaints.  Id. ¶ 20.

Subsequent to the February 2012 instances, Plaintiff alleges that Diaz again sexually harassed her three times in

---

[2]  The Complaint contains detailed allegations about Diaz's actions towards Plaintiff, the manner in which Diaz allegedly sexually harassed Plaintiff, and instances in which Diaz allegedly sexually harassed other women.  The Court will not set forth such allegations in their entirety because Defendant's motion does not contest the sufficiency of the Complaint.  The Court will only discuss Plaintiff's allegations to the extent they pertain to whether Plaintiff exhausted her administrative remedies.

August 2012. Id. ¶ 21. Plaintiff alleges that she did not report the first two August 2012 instances in which Diaz allegedly sexually harassed Plaintiff because no one other than herself and Diaz witnessed the harassment and, therefore, Goldsmith's earlier statements regarding her likelihood of success on a "her word against his" claim dissuaded her from filing a formal complaint. Id. ¶¶ 21-22.

Plaintiff alleges that Diaz sexually harassed her a third time on August 13, 2014. Following the incident, Plaintiff informed a coworker, Sheila Saunders ("Saunders"), of the harassment. Id. ¶ 24. Saunders informed Plaintiff that Diaz had harassed her in a similar manner and indicated that she would support Plaintiff if she filed a complaint with Human Resources. Id. Plaintiff then called Goldsmith and, again choosing to remain anonymous, informed her of the incident. Id. ¶ 25. Goldsmith remembered Plaintiff's earlier anonymous complaints about Diaz and persuaded Plaintiff to submit to an interview at the Human Resources office. Id. Goldsmith then interviewed Plaintiff at such office and Plaintiff reported to Goldsmith most of Diaz's conduct. Id. During the interview, Plaintiff requested a leave of absence, but Goldsmith denied her request because Plaintiff did not have any personal leave available. Id. Goldsmith did, however, assure Plaintiff that she would not encounter Diaz again. Id.

4

After the interview with Plaintiff, Goldsmith initiated an investigation into Plaintiff's allegations. Id. ¶ 27. According to Plaintiff, pursuant to Human Resource Department policy, the City would not provide Plaintiff with "any information throughout the course of its investigation, other than that [Diaz] was still employed by the City." Id. ¶ 28. Plaintiff alleges that this "kept her in a state of anxiety as to when he might show up to her workplace." Id. The City terminated Diaz approximately six months after the investigation began. Id.

Regarding the City's knowledge of Diaz's conduct, Plaintiff alleges that the City "had a heightened duty to take steps to prevent Diaz's misconduct" because he "wielded substantial authority to direct and supervise the custodians subordinate to him, including [Plaintiff]." Id. ¶ 32. Furthermore, Plaintiff alleges that the City "knew or should have known that Diaz maintained a hostile work environment based on sex" because of multiple complaints by Diaz's subordinates that he sexually harassed them. Id. ¶ 33. Plaintiff alleges that the City is liable for Diaz's harassing misconduct because it: negligently permitted his harassment to occur by failing to act on complaints about Diaz's harassment; negligently permitted the August 2012 assaults on Plaintiff when Goldsmith discouraged

Plaintiff to file a formal complaint; and failed to have a policy to handle anonymous complaints of sexual harassment. Id.

On April 9, 2013, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Pl.'s Opp'n to Mot. to Dismiss Ex. 1 ("EEOC Charge"), ECF No. 6-1. In its entirety, the charge states:

> My employment began with the Respondent on September 26, 2010, as a Custodian I and I presently hold this position. From February 1, 2012, through August 14, 2012, I was sexually harassed by my [c]rew leader through unwelcome touching of my breasts, stalking, staring, a passion bite on the cheek and a kiss on the lips. I reported the sexual harassment to [S]helby Goldsmith, the Human Resources representative on August 13, 2012. I had made an anonymous complaint to Ms. Goldsmith during March 2012 or April 2012. She asked if there were any witnesses both times. She told me that it would be hard to prove if there was no witness because it would be my word against his word. The sexual harassment continued after I complained in August 2012. Other females have also been sexually harassed by the [c]rew leader.
>
> The Respondent maintains a Sexual Harassment policy. After I complained the Respondent conducted an investigation but I was not informed of the outcome nor was I given any compensatory relief for the sexual harassment. Respondent has acknowledged that there were other females who were sexually harassed by the crew leader.
>
> I believe I was sexually harassed and subjected to a hostile work environment in violation [of] Title VII of the Civil Rights Act of 1964, as amended, and in violation of the Virginia Human Rights Act, VA Code [§] 2.2-3900, et seq., because of my sex, female.
>
> I believe the females as a [c]lass have been sexually harassed and subjected to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, and in violation of the Virginia

> Human Rights Act, VA Code [§] 2.2-3900, et seq., due
> to their sex, female.

Id. In addition to alleging those factual particulars, in her charge, Plaintiff checked a box indicting that Defendant discriminated against her based on "sex." See id. On September 17, 2014, the EEOC issued a right-to-sue notice to Plaintiff.

On December 19, 2014, Plaintiff filed her action in this Court. In her Complaint, Plaintiff has alleged a single cause of action for sexual harassment under Title VII. More specifically, Plaintiff alleges that Diaz's actions created an actionable hostile work environment by which Defendant discriminated against Plaintiff because of her sex. Compl. ¶ 31.

On January 28, 2015, Defendant moved to dismiss the Complaint on the basis that Plaintiff had failed to exhaust her administrative remedies before filing the instant action. Def.'s Mot. to Dismiss, ECF No. 4. According to Defendant, the centerpiece of Plaintiff's administrative charge is that "she was not informed of the outcome of the investigation into hers['] and others['] complaints about Diaz and the fact that she was not compensated for any harassment by Diaz." Def.'s Mem. Supp. Mot. to Dismiss at 7, ECF No. 5. Therefore, Defendant asserts, Plaintiff has procedurally defaulted her current claim because, in Count I of the Complaint, Plaintiff

alleges that the City is liable for Diaz's harassment based on Ms. Goldsmith's advice to Plaintiff that it would be difficult to prove a sexual harassment claim based solely on Plaintiff's statements and the City's alleged failure to establish an anonymous complaint policy. See id. at 10.

On February 9, 2015, Plaintiff filed her memorandum in opposition to Defendant's motion to dismiss. Pl.'s Mem. Opp'n Mot. to Dismiss, ECF No. 6. In response, Plaintiff argues that she has adequately exhausted her administrative remedies through her EEOC charge because the time frames, actors, and discriminatory conduct alleged in her EEOC charge are the same as those alleged in Count One of the Complaint. Id. at 7-8. Additionally, Plaintiff argues that the City was not "caught off guard" by Plaintiff's allegations concerning Ms. Goldsmith's response to her anonymous complaint or the City's alleged failure to maintain a policy to handle anonymous sexual harassment complaints. Id. at 10-11. According to Plaintiff, this is so with respect to the former allegations because the EEOC, in fact, investigated Plaintiff's complaints to Ms. Goldsmith. Id. Regarding the latter allegations, Plaintiff contends that the City was not caught off guard because, first, it would have nothing to investigate regarding an anonymous complaint policy as "either the City had a policy for anonymous complaints of sexual harassment in 2012 or it did not," and,

8

second, the EEOC actually investigated whether the City maintained an anonymous sexual harassment complaint system during its inquiry. Id. at 11-12.

On February 18, 2015, Defendant filed its reply to Plaintiff's memorandum in opposition. Def.'s Reply Supp. Mot. to Dismiss, ECF No. 7. In reply, Defendant seizes upon Plaintiff's statement in her brief that "'the EEOC investigator [] would simply have no reason to inquire as to whether the City negligently permitted Diaz's conduct.'" Id. at 7 (alteration in original) (quoting Pl.'s Mem. Opp'n to Mot. to Dismiss at 3). Thus, in light of that statement, Defendant questions "how is it at all possible that the city was on notice as to the possibility of such a claim or that the reasonable investigation of [Plaintiff's] administrative charge would alert the City to the possibility of [such] a claim." Id. at 10. Thus, the parties have fully briefed the matter and it is now ripe for review.

## II. STANDARD OF REVIEW

A party may move to dismiss an action for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). Fed. R. Civ. P. 12(b)(1). "When a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness

9

of the facts alleged." Kerns v. United States, 585 F.3d 187, 183 (4th Cir. 2009).[3] "On the other hand, when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction, the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." Id. Finally, "when the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." Id. (citation omitted).

Importantly, "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (citation omitted). "In determining what claims a plaintiff properly alleged before the EEOC, [a court] may look only to the charge filed with that agency." Balas v. Huntington Ingalls Indus., 711 F.3d 401, 408 (4th Cir. 2013).

---

[3] See also Lufti v. United States, 527 F. App'x 236, 241 (4th Cir. 2013) (unpublished) (noting that "[i]n a facial challenge, the plaintiff is afforded the same procedural protections as he would be accorded when faced with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Namely, all alleged facts are taken as true and the motion will be denied if the complaint alleges facts that, if proven, would be sufficient to sustain jurisdiction.").

### III. DISCUSSION

#### A. Administrative Exhaustion

Before a plaintiff may file suit under Title VII, Congress has mandated that the plaintiff must first file a charge of discrimination with the EEOC. See 42 U.S.C. § 2000e-5(b), (f)(1).[4] Thus, "[i]n any subsequent lawsuit alleging unlawful employment practices under Title VII, a federal court may only consider those allegations included in the EEOC charge." Balas, 711 F.3d at 407 (citation omitted). Therefore, if the claims "'exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.'" Id. at 407-08 (quoting Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005)). More specifically, "'[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'" Jones, 551 F.3d at 300 (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996)). However, as this Court has noted, "the three methods for defining the scope of an

---

[4] The Fourth Circuit has discussed at length the purposes of Title VII's administrative exhaustion requirement and, therefore, the Court will not discuss such well-established purposes here. E.g., Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005); see also Johnson v. Portfolio Recovery Assocs., LLC, 682 F. Supp. 2d 560, 569-70 (E.D. Va. 2009); 2 Barbara T. Lindemann et al., Employment Discrimination Law 29-27 (5th ed. 2012).

EEOC charge . . . are intricately connected" and "are not three separate elements, but three separate ways to define the scope of an EEOC charge." Brown v. Huntington Ingalls, Inc., Civil Action No. 4:13cv26, 2013 WL 5591932, at *6 (E.D. Va. July 25, 2013) (citation omitted).

In applying the administrative exhaustion doctrine, the Fourth Circuit has discussed certain situations in which allegations in an EEOC charge are insufficient to exhaust a Title VII claim. "A claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." Jones, 551 F.3d at 300 (citations omitted). Likewise, "a claim will also typically be barred if the administrative charge alleges one type of discrimination-such as discriminatory failure to promote-and the claim encompasses another type-such as discrimination in pay and benefits." Chacko, 429 F.3d at 509 (citations omitted). Finally, "a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." Id. at 506.

However, "EEOC charges often are not completed by lawyers and as such 'must be construed with utmost liberality.'" Id.

(quoting Alvarado v. Bd. of Trs. of Montgomery Cnty. Cmty. Coll., 848 F.2d 457, 460 (4th Cir. 1988)). Indeed, the Fourth Circuit has cautioned courts against letting "the exhaustion requirement . . . become a tripwire for hapless plaintiffs." The Fourth Circuit has emphasized that:

> [w]hile it is important to stop clever parties from circumventing statutory commands, we may not erect insurmountable barriers to litigation out of overly technical concerns. . . . It would be inconsistent with [Title VII's] framework to require untrained parties to provide a detailed essay to the EEOC in order to exhaust their administrative remedies.

Sydnor v. Fairfax County, 681 F.3d 591, 594 (4th Cir. 2012).

### B. Plaintiff's Claims

The Court will now assess whether the allegations in Plaintiff's EEOC charge sufficiently exhausted her administrative remedies so as to permit the Court to exercise subject matter jurisdiction over Plaintiff's Title VII action. For the reasons stated below, Plaintiff has satisfied Title VII's administrative exhaustion requirement.

To begin, a comparison between Plaintiff's EEOC charge and the Complaint demonstrates that this case falls outside the heartland of situations where a plaintiff's charge clearly fails to exhaust her administrative remedies. In this case, both Plaintiff's EEOC charge and her Complaint allege the same form of discrimination, hostile work environment sexual harassment, on the same prohibited basis, discrimination based on sex. See

13

EEOC Charge ("I was sexually harassed by my Crew Leader . . . .
I believe I was sexually harassed and subjected to a hostile
work environment . . . because of my sex, female."); Compl. ¶ 31
("By reason of her sex, Plaintiff suffered unwelcome, severe,
and pervasive actions at the hands of Defendant's crew leader,
which . . . created an intimidating, hostile and offensive work
environment . . . ."). Thus, this case falls outside the Fourth
Circuit's instruction that administrative exhaustion typically
bars claims involving different bases of discrimination and
different types of discrimination than those set forth in the
administrative charge. See Chacko, 429 F.3d at 509 (citations
omitted).

Similarly, contrary to Defendant's contention, the
allegations in Plaintiff's Complaint involve the same time
frames, actors, and discriminatory conduct as those in
Plaintiff's EEOC charge and, therefore, this case is
distinguishable from Chacko. As noted above, in Chacko, the
Fourth Circuit held that "a plaintiff fails to exhaust his
administrative remedies where . . . his administrative charges
reference different time frames, actors, and discriminatory
conduct than the central factual allegations in his formal
suit." Id. at 506. In that case, the plaintiff's EEOC charge
alleged unlawful discrimination through a denial of promotion
based on national origin, a hostile work environment based on

14

national origin, and retaliation for filing two administrative
charges. Id. at 508. With respect to the hostile work
environment claim in the plaintiff's EEOC charge, the
plaintiff's factual allegations involved three discrete acts of
harassment at specific times, by the plaintiff's supervisors,
that did not involve national-origin slurs. See id. at 511-12.
However, at trial, the "centerpiece" of the plaintiff's hostile
work environment claim was that "coworkers continually made
derogatory remarks to him over the course of his twenty-year
career, and that supervisors did not discipline these coworkers,
laughed at their comments, and may have joined them." Id. at
510-11. After a jury rendered a verdict for the plaintiff on
his hostile work environment claim, on appeal, the Fourth
Circuit held that the plaintiff had failed to exhaust his
administrative remedies with respect to such claim. Id. at 506,
508. The Chacko court held that the plaintiff had not exhausted
his Title VII hostile work environment claim because the
allegations in the plaintiff's administrative charge involved
different time frames—three specific incidents in one year
rather than continuous harassment over decades, actors—
discrimination by supervisors rather than coworkers, and
discriminatory conduct—confrontations without name calling
rather than the use of national origin epithets—than the facts
of the plaintiff's hostile work environment claim presented at

trial.  Id. at 506, 511-12.  According to the court, given such differences, the hostile work environment allegations in the plaintiff's administrative charge were not reasonably related to the factual "centerpiece" of his hostile work environment claim presented at trial, nor would a reasonable investigation of the charge allegations have uncovered the facts adduced at trial. Id. at 512.

Here, unlike Chacko, the time frames, actors, and discriminatory conduct alleged in Plaintiff's charge are the same as the time frames, actors, and discriminatory conduct alleged in the Complaint.  First, both Plaintiff's EEOC charge and Complaint concern the same time period: February to August 2012.  See EEOC Charge (alleging that "[f]rom February 1, 2012 through August 14, 2012, I was sexually harassed); Compl. ¶¶ 16, 21-26 (alleging incidents of sexual harassment beginning in February 2012 and ending in August 2012).  Second, Plaintiff's charge and her Complaint involve the same actors.  In both her EEOC charge and Complaint, Plaintiff identifies one person as the source of the sexual harassment, her crew leader, Diaz.  See EEOC Charge ("I was sexually harassed by my Crew Leader"); Compl. ¶ 31 ("Plaintiff suffered unwelcome, severe, and pervasive actions at the hands of Defendant's crew leader, which . . . created an intimidating, hostile and offensive work environment . . . .").  Likewise, the charge and Complaint also

16

identify Ms. Goldsmith as the person in Defendant's Human Resources Department whom Plaintiff contacted regarding Diaz's conduct. See EEOC Charge; Compl. ¶ 19 Third, Plaintiff's Complaint alleges the same discriminatory conduct Plaintiff presented in her EEOC charge, namely, that Diaz's actions created a hostile work environment based on sex. See EEOC Charge ("I was sexually harassed by my Crew Leader . . . . I believe I was sexually harassed and subjected to a hostile work environment . . . because of my sex, female."); Compl. ¶ 31 ("By reason of her sex, Plaintiff suffered unwelcome, severe, and pervasive actions at the hands of Defendant's crew leader, which . . . created an intimidating, hostile and offensive work environment . . . ."). In contrast with Chacko, the same facts that Plaintiff alleged, in her EEOC charge, to have created a hostile work environment—Diaz's sexual harassment—form the basis of the Title VII hostile work environment claim in Plaintiff's Complaint. Accordingly, Chacko does not suggest that Plaintiff has failed to exhaust her administrative remedies.

To be sure, Plaintiff's EEOC charge allegations are not identical to the allegations in her Complaint. In her EEOC charge, Plaintiff appears to allege, inter alia, that Defendant is liable for Diaz's misconduct because it did not inform her of the outcome of the investigation into Diaz's conduct and failed to provide her with "compensatory relief" for Diaz's sexual

harassment. On the other hand, as Defendant correctly notes, in her Complaint, Plaintiff alleges that Defendant is liable for Diaz's actions because it negligently permitted him to harass Plaintiff through Ms. Goldsmith's advice discouraging Plaintiff from filing a formal sexual harassment complaint and Defendant's failure to maintain a policy to handle anonymous sexual harassment complaints. See Def.'s Mem. Supp. Mot. to Dismiss at 11; Compl. ¶ 34.

However, the presence of additional allegations in the Complaint, contrary to Defendant's contention, does not alter the centerpiece of Plaintiff's claim—that Diaz's sexual harassment created a hostile work environment on the basis of sex. At most, the additional allegations in Plaintiff's Complaint, concerning Ms. Goldsmith discouraging Plaintiff from filing a complaint and the absence of an anonymous sexual harassment complaint policy, are additional theories to attribute liability to the City for the same hostile work environment created by Diaz's actions as alleged in both Plaintiff's EEOC charge and Complaint. But, the "touchstone for exhaustion is whether [the] plaintiff's administrative and judicial claims are reasonably related, not precisely the same . . . ." Sydnor, 681 F.3d at 595 (internal quotation marks and citation omitted).

Indeed, the Fourth Circuit has found administrative exhaustion where a plaintiff has asserted the same type of discrimination in her charge as in her complaint, but alleged in the complaint that the discrimination involved conduct different from that alleged in the administrative charge. For example, in Sydnor, the court concluded that the plaintiff had exhausted an ADA failure-to-accommodate claim through a charge alleging that the defendant failed to provide one form of accommodation for the plaintiff's disability, even though the plaintiff's complaint relied on a different accommodation for the same disability. Id. at 594-95. The court emphasized that "the variation in [the] proposed accommodations does not mean that [the plaintiff] failed to exhaust her administrative remedies" and found that the allegations in the complaint were reasonably related to those in the EEOC charge because they involved the same workplace, the same actor, the same type of discrimination, and the same disability. Id. Likewise, in Smith v. First Union National Bank, the court found that allegations in a Title VII complaint were reasonably related to those in an EEOC charge because both allegations involved retaliation by the same actor, even though the charge alleged different retaliatory conduct than the complaint. 202 F.3d 234, 248 (4th Cir. 2000); see also Chisholm v. U.S. Postal Serv., 665 F.2d 482, 491 (4th Cir. 1981) (finding exhaustion where both the EEOC charge and complaint

alleged discrimination in promotions, but challenged different aspects of the same promotional system).

Notwithstanding the slight differences between Plaintiff's EEOC charge and her Complaint, the Court concludes that Plaintiff's Title VII hostile work environment claim, at minimum, is reasonably related to the allegations in Plaintiff's EEOC charge. This case does not, like Chacko, "involve shifting sets and a rotating cast of characters that would have deprived [Defendant] of notice of the allegations against it." Sydnor, 681 F.3d at 595 (citing Chacko, 429 F.3d at 511). Rather, Plaintiff's administrative charge and the Complaint involve the same actors, same time frame, and same type of discrimination. Therefore, as in Sydnor, Smith, and Chisholm, the allegations in Plaintiff's Complaint are reasonably related to those alleged in her EEOC charge despite the minor differences between the EEOC charge and the Complaint regarding the manner in which Plaintiff attempts to assign liability to Defendant for the same hostile work environment allegedly created by Diaz's actions.

Furthermore, the Court rejects Defendant's contentions that the charge did not put Defendant on notice of the claims in Plaintiff's Complaint and that the claims in the Complaint would not flow from a reasonable investigation of Plaintiff's EEOC charge. In Defendant's view, Plaintiff's charge did not put it on notice that she might attempt to attribute hostile work

20

environment liability to the City based on Ms. Goldsmith's advice to Plaintiff and the City's failure to maintain an anonymous complaint policy. Def.'s Reply Supp. Mot. to Dismiss at 5, 12-15. However, here, the EEOC charge gave Defendant reasonable notice of Plaintiff's Title VII claims because the factual predicate for the theories of liability in the Complaint was present on the face of Plaintiff's EEOC charge. In the charge, Plaintiff alleges that she made anonymous complaints to Ms. Goldsmith, that Ms. Goldsmith advised her that a harassment claim would be "hard to prove if there was no witness because it would be my word against his word," and that the alleged sexual harassment continued thereafter. See EEOC Charge. Construing Plaintiff's charge with the "utmost liberality," Balas, 711 F.3d at 408 (citation omitted), such allegations, considered together with Plaintiff's charge allegations that Defendant maintained a hostile work environment based on Diaz's actions, provided sufficient notice to Defendant that Plaintiff might rely on Ms. Goldsmith's actions and the City's lack of an anonymous complaint policy as a basis for attributing liability for Diaz's alleged sexual harassment to the City.[5] And, for the same

---

[5] Plaintiff's EEOC charge may not have perfectly set forth, from beginning to end, the chain of logical inferences connecting Diaz's sexual harassment to Ms. Goldsmith's advice to Plaintiff, or the manner in which the City addressed Plaintiff's anonymous complaints, to Plaintiff's allegation that the Defendant maintained a hostile work environment based on Diaz's alleged harassment. However, the administrative exhaustion requirement does not impose such a burden on

reason, the claims in the Complaint would flow from a reasonable investigation into the allegations presented in the charge because they rely on the same underlying facts.[6]  Therefore, having determined that the claims in Plaintiff's Complaint are reasonably related to those set forth in her EEOC charge allegations, the Court will **DENY** Defendant's motion to dismiss because Plaintiff has exhausted her administrative remedies.

### IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion to Dismiss, ECF No. 4.

The Clerk is **DIRECTED** to send a copy of this Memorandum Order to all counsel of record.

---

Plaintiff.  Cf. Sydnor, 681 F.3d at 594 (emphasizing that, in a "remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process," it would be "inconsistent . . . to require untrained parties to provide a detailed essay to the EEOC in order to exhaust their administrative remedies."); Agolli v. Office Depot, Inc., 548 F. App'x 871, 876 (4th Cir. 2013) (noting that "[a]n EEOC charge simply is not held to the same standard as a federal court complaint . . . ."). Instead, administrative exhaustion requires only that the allegations in Plaintiff's administrative charge reasonably relate to those in her Complaint.  Jones, 551 F.3d at 300.  For the reasons stated above, Plaintiff has met that standard.

[6] The Court also finds unavailing Defendant's argument that Plaintiff's statement in her brief, that "the EEOC investigator [] would simply have no reason to inquire as to whether the City negligently permitted Diaz's conduct," indicates that Plaintiff has failed to exhaust her administrative remedies.  Def.'s Reply Supp. Mot. to Dismiss at 3.  After thoroughly reviewing the Plaintiff's administrative charge and her Complaint, and comparing such allegations with the Fourth Circuit's decisions in Sydnor, Smith, and Chisholm, any statement in Plaintiff's brief does not alter the Court's conclusion that the claims in Plaintiff's Complaint are reasonably related to those in her EEOC charge.

IT IS SO ORDERED.

_____ /s/ ⟨signature⟩

Mark S. Davis
United States District Judge

Norfolk, Virginia
April 3 , 2015